## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No: 1:23-cr-21 (CKK) |
| | |
| | 18 U.S.C. § 1001(a)(1) |
| | (Concealment of Material Facts) |
| v. | |
| **CHARLES F. MCGONIGAL,** | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Charles F. McGonigal, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

1. The United States Department of Justice is a department within the Executive Branch of the United States government. The Federal Bureau of Investigation ("FBI") is the principal investigative arm of the United States Department of Justice and is a national security organization with both intelligence and law enforcement responsibilities.

2. Defendant CHARLES F. MCGONIGAL was a Special Agent in Charge ("SAC") of the FBI's New York Field Office from October 2016 until his retirement from the FBI on September 14, 2018, and during that time was a member of the Senior Executive Service ("SES"). Defendant McGonigal was responsible for overseeing counterintelligence and national security

matters as an SAC.

3.      As a SAC of the FBI's New York Field Office and a member of the SES, defendant McGonigal had a legal duty to file an annual public financial disclosure report pursuant to the Ethics in Government Act of 1978, 5 U.S.C. app. 4 §§ 101, *et seq*. The financial disclosures were made on an Office of Government Ethics ("OGE") Form 278 ("OGE-278"), the purpose of which was to: (a) foster transparency, trust, and confidence in the integrity and decision-making of the Executive Branch; and (b) assist public employees and their agencies in avoiding actual or apparent conflicts of interest between official duties and private financial interests. Filers were required to accurately disclose to the public, among other things, income, assets greater than $1,000, liabilities over $10,000, gifts and travel reimbursements, and other financial transactions. Information provided on the OGE-278 forms could result in employment action being taken against the filer. The OGE-278 forms were submitted electronically and routed to FBI Headquarters in Washington, D.C.

4.      Defendant McGonigal had a duty and was required by FBI Policy Directives and FBI policy generally, to report accurately to the FBI any unofficial foreign travel, and any ongoing professional or official contacts with foreign nationals, and he was also required to report accurately official foreign travel to the FBI. The official and unofficial travel disclosures were required to be made on FBI Report of Foreign Travel Forms ("FD-772") and FBI Foreign Travel Debriefing Forms ("FD-772b"), which were submitted electronically and routed to FBI Headquarters in Washington, D.C. The disclosures of contacts with foreign nationals were required to be made on FBI Report of Foreign Contact Forms ("FD-981"). Information provided on the various forms had national security implications and could result in employment action

including revocation of security clearances where appropriate.

5. As the holder of a national security clearance, defendant McGonigal was required to report to the FBI accurate and complete information relating to his contacts with foreign officials and his financial assets and liabilities.

6. Person A was a naturalized United States citizen who was born in Albania and who resided in New Jersey. Person A was a professional acquaintance and potential business partner of defendant McGonigal.

7. Company A was a Delaware business organization registered by Person A in January 2018.

8. Person B was an Albanian national who was employed by a Chinese energy conglomerate. Person B operated as an informal advisor to the Prime Minister of Albania, retaining an official Albanian government email account and passport, and was a former Albanian senior government official. Person A and Person B were friends and business associates with each other.

9. In the fall of 2017, in anticipation of his retirement from the FBI, defendant McGonigal and Person A discussed a prospective joint business venture, including the formation of a private company providing consulting services. During the relevant time frame, defendant McGonigal knew that it was improper to engage in personal business development efforts without disclosing these activities to the FBI. Defendant McGonigal requested a loan from Person A.

10. On September 5, 2017, defendant McGonigal submitted an FD-772 form to the FBI for upcoming "unofficial" travel to Albania. The submission improperly failed to: (a) identify that Person A would be a travel companion, (b) state that lodging and accommodations would be provided free of charge and who would be paying for them, (c) state that defendant McGonigal

would be traveling to Kosovo in addition to Albania, and (d) identify any anticipated reportable foreign contacts including Person B, or any other foreign national with whom defendant McGonigal had an ongoing relationship.

11. On September 7, 2017, defendant McGonigal traveled by air with Person A from the United States to Albania, where over the next several days they met with Person B and other foreign nationals. Neither McGonigal nor the FBI paid for McGonigal's lodging while in Albania.

12. On September 9, 2017, in Albania, defendant McGonigal met with Person B and the Prime Minister of Albania. At the request of Person A, defendant McGonigal cautioned the Prime Minister of Albania to avoid awarding oil field drilling licenses in Albania to Russian front companies. Person A and Person B had a financial interest in the Government of Albania's decisions about awards of oil field drilling licenses. Defendant McGonigal gave an FBI hat to the Prime Minister of Albania in the presence of Person B, as a gesture of appreciation.

13. In September 2017, in Albania, defendant McGonigal was introduced by Person A to an Albanian businessperson and politician who told defendant McGonigal that he wanted the United States government to investigate an alleged plot to kill the Albanian businessperson and politician.

14. On September 10, 2017, defendant McGonigal traveled by car from Albania to Kosovo, along with Person A, and others, where defendant McGonigal met with and provided an FBI hat to a Kosovar politician. Shortly after this trip to Kosovo, which had the dual purpose of collecting information that was potentially useful both to the FBI and defendant McGonigal's own undisclosed personal business development plan, defendant McGonigal and Person A, traveling together, returned to the United States.

15. Following his September travel to Albania, defendant McGonigal maintained an

ongoing relationship with the Prime Minister of Albania and Person B.

16. On October 5, 2017, outside a restaurant, in a parked car in New York City, defendant McGonigal received approximately $80,000 in cash as part of the loan he had requested from Person A.

17. In the fall of 2017, defendant McGonigal twice more received cash loans from Person A, in the amounts of approximately $80,000 and $65,000.

18. Defendant McGonigal has never repaid the loan he received from Person A and the loan did not have any terms or conditions attached to it.

19. On October 16, 2017, defendant McGonigal submitted an FD-772b regarding his September travel to Albania and Kosovo. The submission improperly failed to disclose that defendant McGonigal had met with the Prime Minister of Albania in Albania and with a Kosovar politician in Kosovo, and falsely denied that defendant McGonigal had disclosed his employment to a foreign national outside of official FBI business.

20. On November 15, 2017, defendant McGonigal submitted an FD-772 for upcoming "official" travel to Austria. The submission improperly failed to: (a) identify that Person A would be a travel companion, (b) identify that any lodging or accommodations would be provided free of charge or who would be paying for them, (c) state that defendant McGonigal would be traveling to Albania in addition to Austria, and (d) identify any anticipated reportable foreign contacts.

21. On November 17, 2017, defendant McGonigal travelled by air to Austria.

22. On November 18, 2017, defendant McGonigal and another representative of the Department of Justice (DOJ) met and interviewed the same Albanian businessperson and politician defendant McGonigal had met during his September 2017 trip. Person A attended the meeting as an interpreter. Defendant McGonigal did not prepare a standard FBI Form 302 report of the

interview, and the FBI has no official record of it taking place.

23. On November 18, 2017, after the meeting described above, defendant McGonigal and Person A traveled by air from Austria to Albania, where they met again with the same Albanian businessperson and politician, this time without the participation of the other DOJ official. The Albanian businessperson and politician discussed business opportunities with defendant McGonigal and Person A.

24. On November 21, 2017, defendant McGonigal travelled by air from Albania to Austria, and then returned to the United States. Neither McGonigal, nor the FBI, paid for McGonigal's lodging while he was in Albania.

25. On November 25, 2017, defendant McGonigal informed the Department of Justice of a potential new criminal investigation involving a U.S. citizen who had registered to perform lobbying work in the United States on behalf of an Albanian political party different from the one in which the Prime Minister was a member. One day earlier, he had received information from Person B about the U.S. citizen lobbyist. Defendant McGonigal passed this information along to the Department of Justice.

26. In December 2017, defendant McGonigal dined in Washington, D.C. with Person A and Albanian government officials, and dined in New York City with Person A and the Prime Minister of Albania. There were no political discussions at dinner.

27. On January 22, 2018, defendant McGonigal submitted an FD-772b regarding his November travel to Austria referenced above. The submission improperly failed to disclose that defendant McGonigal had travelled to Albania as well as Austria, or that he had met with either Person B or the Prime Minister of Albania, or that he had disclosed his FBI employment to a foreign national outside of official business.

28. On January 22, 2018, defendant McGonigal received information about the U.S. citizen lobbyist from Person A, and he forwarded the information to another FBI-NY official, who was his subordinated employee. Person A had received the information from the Office of the Albanian Prime Minister.

29. From February 21, 2018, through February 24, 2018, defendant McGonigal traveled with Person A to Albania, but he did not report the travel to the FBI as required using the FD-772 or FD-772b forms.

30. On February 26, 2018, the FBI-NY formally opened a criminal investigation focused on the U.S. citizen lobbyist based in part on information provided by defendant McGonigal and his direction. Person A was later identified by the FBI-NY as a confidential human source supporting the investigation, and Person A provided information to the FBI-NY during the investigation. Person B later helped facilitate a meeting between the FBI-NY and witnesses located in Europe by, among other things, paying for the witnesses' travel expenses. Defendant McGonigal had not disclosed his financial relationship with Person A to the FBI, nor had defendant McGonigal disclosed his ongoing contacts with Person B as required using the FD-981 form.

31. On March 4, 2018, defendant McGonigal dined in Washington, D.C., with, among others, Person A, the Prime Minister of Albania, and a former FBI Special Agent who was working at an international professional services firm.

32. From April 26, 2018, through May 2, 2018, defendant McGonigal travelled with Person A to Europe, including Albania, but did not report the travel to the FBI as required using the FD-772 or FD-772b forms.

33. On June 10, 2018, defendant McGonigal submitted an OGE-278 form that improperly failed to include any information about the approximately $225,000 loan that he had

received from Person A.

34. Between August 2017 and defendant McGonigal's retirement from the FBI in or around September 2018, defendant McGonigal did not report ongoing professional or official contacts with foreign nationals to the FBI as required using the FD-981 forms.

35. On May 6, 2019, around nine months after his retirement from the FBI, defendant McGonigal submitted an OGE-278 form that improperly failed to include any information about the approximately $225,000 loan that he had received from Person A either as an asset or liability.

36. In sum, beginning no later than August 2017, and continuing until at least May 6, 2019, defendant Charles McGonigal concealed aspects of his relationship with Person A that he had a duty to disclose created an actual and apparent conflict of interest between his official FBI duties and his private interests, including that McGonigal accepted $225,000 from Person A; travelled with Person A to Europe; and established ongoing relationships with foreign nationals introduced to him by Person A and Person A's associates.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/*Elizabeth Aloi*
Elizabeth Aloi
Stuart Allen
Assistant United States Attorneys

## DEFENDANT'S ACKNOWLEDGMENT

I, Charles F. McGonigal, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/20/2023

_____
Charles F. McGonigal
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/20/23

_____
Seth DuCharme, Esq.
Attorney for Defendant